IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

LPP MORTGAGE LTD.                   :        CIVIL ACTION
                                    :
          v.                        :
                                    :
CALEDONIA SPRINGS, INC, et al.      :        NO. 02-0172

MEMORANDUM

Bartle, C.J.                                    November 6, 2007

          Plaintiff LPP Mortgage Ltd. has sued the following

defendants:  Caledonia Springs, Inc.("Caledonia"); Jay Thomas

Watson; Leona B. Watson[1]; Curneall Watson[2]; Gail W. Turner[3]; Peter

H. Chiang individually and as guardian for Perry K. Turner II,

Lyn Maria Turner and Aaron Turner; Perry K. Turner II; Lyn Maria

Turner; Aaron Turner[4]; the United States Internal Revenue

Service; the Government Employees' Retirement System of the

United States Virgin Islands ("GERS"); the Farmers Home

Administration; the United States Small Business Administration

("SBA"); and the Small Business Development Agency.  Plaintiff

---

1.  Leona B. Watson is also known as Leona Watson.

2.  Curneall Watson is also known as Corneall Watson and Neal A.
Watson.

3.  Gail W. Turner is also known as Gail Watson, Gail W. Chiang,
Gail Watson Chiang, Gail W. Turner-Chiang, Gail Chiang-Turner,
and Gail W.T. Chiang.

4.  Perry K. Turner II, Lyn Maria Turner and Aaron Turner are
named in the complaint individually.  The loans at issue,
however, were signed by Peter H. Chiang as their guardian.  Perry
K. Turner II, Lyn Maria Turner and Aaron Turner did not execute
any documents individually.  We will therefore only consider the
claims against Peter H. Chiang as their guardian.

seeks judgment for amounts due on a series of loan transactions and a judgment of foreclosure against the properties securing those loans, as well as other incidental relief. Defendants, Caledonia, Jay Thomas Watson, Leona B. Watson, Curneall Watson, Gail W. Turner, Peter H. Chiang individually and as guardian for Perry K. Turner II, Lyn Maria Turner and Aaron Turner, hereinafter the "Caledonia Defendants,"[5] have filed counterclaims against plaintiff alleging breach of contract, breach of fiduciary duty, discrimination on the basis of race and gender, and misrepresentation. Before the court is the motion of plaintiff for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on the ground that no genuine issue of material facts exists and that it is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

## I.

This action arises out of numerous loan agreements between the Caledonia Defendants and the SBA. The following facts are either undisputed or viewed in the light most favorable to defendants, the non-movants.

---

5.   Gail W. Turner, Peter H. Chiang and Curneall Watson are principal owners of Caledonia. Ms. Turner serves as President and Chief Executive Officer of Caledonia. Mr. Chiang serves as Treasurer and Chief Administrative Officer. It is unclear from the record what role, if any, the other individual Caledonia Defendants have with Caledonia. They have, however, filed all motions and memorandums in this case as a group and designated themselves therein as the "Caledonia Defendants."

On October 9, 1987, as part of a loan agreement,
defendants Jay Thomas Watson, Leona B. Watson, and Curneall
Watson executed a promissory note with the SBA, bearing an
account number ending in 3010 PR, in the amount of $40,000.  The
interest rate on the loan was 8 1/8% per annum.  As security for
the loan, Leona B. Watson and Curneall Watson executed and
delivered a mortgage in the amount of $40,000 encumbering Plot
96-E of Estate Grove Place, Prince Quarter, St. Croix, U.S.
Virgin Islands.  As further security, Jay Thomas Watson executed
and delivered a Security Agreement encumbering his machinery and
equipment, vehicles, inventory and accounts receivable.  The
promissory note was modified on November 19, 1993 to reduce the
interest rate to 6 7/8% per annum and to add Gail W. Turner and
Caledonia as makers on the loan.  Jay Thomas Watson, Leona B.
Watson, Curneall Watson, Gail W. Turner, and Caledonia defaulted
on the loan.  The outstanding principal on the loan as of
November 7, 2002 was $25,810.15 plus $11,840.56 in interest.
Since that date additional interest has accrued at the rate of
$5.75 per day.

On September 8, 1988, defendant Caledonia executed a
second promissory note with Banco Popular de Puerto Rico ("Banco
Popular"), bearing an account number ending in 3007 VI, in the
amount of $235,000.  The interest rate on the loan was Banco
Popular's New York Prime interest rate plus 2 1/4%.  The loan was
partially guarantied by the SBA.  Also on September 8, 1988,
Leona B. Watson, Curneall Watson, and Gail W. Turner signed

-3-

guaranties of payment, in which they were made personally liable
for all monies due under the loan.  As security for the loan,
Curneall Watson and Caledonia executed and delivered two
mortgages encumbering:  (1) Plot 2-F of Estate La Reine, King
Quarter, St. Croix, U.S. Virgin Islands, in the amount of
$200,000; and (2) Plot 7-A Estate Plessens, Prince Quarter, St.
Croix, U.S. Virgin Islands, in the amount of $35,000.  Caledonia
also executed and delivered two security agreements encumbering
all of its accounts receivable and its inventory, furniture and
fixtures.  The promissory note was modified on March 30, 1989
when Caledonia executed an additional mortgage note for $20,000,
bringing the total principal to $255,000.  The interest rate
remained the same.  Leona B. Watson, Curneall Watson, and Gail W.
Turner again executed and delivered an unlimited guaranty of
payment.  Caledonia executed and delivered a second priority
mortgage for the additional mortgage note encumbering Plot 2-F of
Estate La Reine, King Quarter, St. Croix, U.S. Virgin Islands, in
the amount of $20,000.  Leona B. Watson and Curneall Watson also
executed and delivered a third priority demand mortgage
encumbering the Plot 7-A Estate Plessens, Prince Quarter, St.
Croix, U.S. Virgin Islands, in the amount of $20,000.
Subsequently, on April 16, 1992, Banco Popular assigned the
promissory note and mortgage note to the SBA.  On November 19,
1993 the promissory note was modified again to fix the interest
rate at 6 7/8% per annum and to add Leona B. Watson, Curneall
Watson, and Gail W. Turner as makers.  Caledonia, Leona B.

Watson, Curneall Watson, and Gail W. Turner defaulted on the loan.  The outstanding principal as of November 7, 2002 was $218,929 plus $137,818.90 in interest.  Since that date additional interest has accrued at the rate of $64.48 per day.

On March 2, 1990 Leona B. Watson and Curneall Watson executed a third promissory note with the SBA, bearing an account number ending in 3004 VI, in the amount of $109,400.  The interest rate on the loan was 4% per annum.  As security for the loan, Leona B. Watson and Curneall Watson executed and delivered a mortgage in the amount of $109,400 encumbering Plots 101 and 106 of Estate Grove Place, Prince Quarter, St. Croix, U.S. Virgin Islands.  On March 19, 1991 Leona B. Watson and Curneall Watson executed an amended note, which was substituted for the March 2, 1990 promissory note, in the amount of $123,800.  The interest rate on the loan remained at 4% per annum.  The mortgage was likewise amended to increase it to $123,800.  Gail W. Turner executed a guaranty of payment of the obligations of the amended note.  Leona B. Watson and Curneall Watson defaulted on the loan. The outstanding principal on the loan as of November 7, 2002 was $110,187.29 plus $19,574.20 in interest.  Since that date additional interest has accrued at the rate of $11.59 per day.

On July 23, 1990 Leona B. Watson and Curneall Watson executed a fourth promissory note with the SBA, bearing an account number ending in 3006 VI, in the amount of $168,800.  The interest rate on the loan was 4% per annum.  As security for the loan, on July 25, 1990 and October 18, 1990 Leona B. Watson and

Curneall Watson executed and delivered mortgages in the amount of $168,800 encumbering:  (1) Plots 1 and 3 of Estate Spring Garden, North Side Quarter "A," St. Croix, U.S. Virgin Islands; and (2) Plot 2 of Estate Spring Garden, North Side Quarter "A," St. Croix, U.S. Virgin Islands.  Subsequently, the loan was modified and increased twice - first on February 5, 1991 to $188,500 and again on March 19, 1991 to $195,600.  The mortgages were modified upward, accordingly.  On March 19, 1991 Gail W. Turner executed a guaranty of payment of the loan.  Leona B. Watson and Curneall Watson defaulted on the loan.  The outstanding principal as of November 7, 2002 was $182,964.57 plus $41,517.40 in interest. Since that date additional interest has accrued at the rate of $20.05 per day.

On September 26, 1990 Caledonia executed a fifth promissory note with the SBA, bearing an account number ending in 3008 VI, in the amount of $171,500.  The interest rate on the loan was 4% per annum.  At that time Peter H. Chiang, Gail W. Turner, Curneall Watson, and Leona B. Watson executed guaranties of payment of the amounts due on the loan.[6]  Perry K. Turner II, Lyn Maria Turner and Aaron Turner, through their guardian Peter H. Chiang, also executed a guaranty of payment.[7]  Caledonia

_____

6.  Gail W. Turner's guaranty was limited to her interest in Plot 7-A of Estate Plessens, Prince Quarter, St. Croix, U.S. Virgin Islands.  Curneall Watson and Leona B. Watson's guaranty was limited to their interest in Plots 1, 2 and 3 of Estate Spring Garden, North Side Quarter "A," St. Croix, U.S. Virgin Islands.

7.  The guaranty of Peter H. Chiang, as guardian of Perry K.
(continued...)

executed and delivered a mortgage in the amount of $171,500 to secure the loan encumbering Plot 2-F of Estate La Reine, King Quarter, St. Croix. U.S. Virgin Islands.  Caledonia also secured the loan by executing a security agreement encumbering all its equipment, machinery, inventory and accounts receivable. Curneall Watson and Leona B. Watson executed and delivered a mortgage in the amount of $171,500 to secure the loan encumbering Plots 1, 2, and 3 of Estate Spring Garden, North Side Quarter "A," St. Croix, U.S. Virgin Islands.  As further security, Gail W. Turner and Peter H. Chiang, as guardian for Perry K. Turner II, Lyn Maria Turner, and Aaron Turner, executed and delivered a mortgage in the amount of $171,500 encumbering Plot 7-A Estate Plessens, Prince Quarter, St. Croix, U.S. Virgin Islands.

On February 5, 1991 the promissory note was modified to increase the principal amount on the loan to $234,686.58 and to add Leona B. Watson, Curneall Watson and Gail W. Turner as makers.  Caledonia, Leona B. Watson, Curneall Watson and Gail W. Turner defaulted on the loan.  The outstanding principal on the loan as of November 7, 2002 was $160,409.96 plus $38,981.15 in interest.  Since that date additional interest has accrued at the rate of $17.58 per day.

On September 26, 1990 Caledonia executed a sixth promissory note with the SBA, bearing an account number ending in

---

7(...continued)
Turner II, Lyn Maria Turner, and Aaron Turner, was limited to their interest in Plot 7-A of Estate Plessens, Prince Quarter, St. Croix, U.S. Virgin Islands.

3000 VI, in the amount of $106,900 plus interest at the rate of 4% per annum.  At that time Peter H. Chiang, Gail W. Turner, Curneall Watson, and Leona B. Watson executed guaranties of payment of the amounts due on the loan.[8]  Perry K. Turner II, Lyn Maria Turner and Aaron Turner, through their guardian Peter H. Chiang, also executed a guaranty of payment.[9]  Caledonia executed and delivered a mortgage in the amount of $106,900 to secure the loan encumbering Plot 2-F of Estate La Reine, King Quarter, St. Croix, U.S. Virgin Islands.  Caledonia also secured the loan by executing a security agreement encumbering all of its equipment, machinery, inventory and accounts receivable.  Curneall Watson and Leona B. Watson executed and delivered a mortgage in the amount of $106,900 to secure the loan encumbering Plots 1, 2, and 3 of Estate Spring Garden, North Side Quarter "A," St. Croix, U.S. Virgin Islands.  As further security, Gail W. Turner and Peter H. Chiang, as guardian for Perry K. Turner II, Lyn Maria Turner and Aaron Turner, executed and delivered a mortgage encumbering Plot 7-A Estate Plessens, Prince Quarter, St. Croix, U.S. Virgin Islands.  Caledonia defaulted on the loan.  The outstanding principal on the loan as of November 7, 2002 was

---

8.   Gail W. Turner's guaranty was limited to her interest in Plot 7-A of Estate Plessens, Prince Quarter, St. Croix, U.S. Virgin Islands.  Curneall Watson and Leona B. Watson's guaranty was limited to their interest in Plots 1, 2 and 3 of Estate Spring Garden, North Side Quarter "A," St. Croix, U.S. Virgin Islands.

9.   The guaranty of Peter H. Chiang, as guardian for Perry K. Turner II, Lyn Maria Turner, and Aaron Turner, was limited to their interest in Plot 7-A of Estate Plessens, Prince Quarter, St. Croix, U.S. Virgin Islands.

-8-

$99,049.18 plus $22,454.83 in interest.  Since that date additional interest has accrued at the rate of $10.86 per day.

On November 19, 1993 Caledonia, Gail W. Turner, Curneall Watson and Leona B. Watson entered into a Reaffirmation of Debts and Modification of Loan Agreement ("Reaffirmation Agreement") with the SBA, wherein it granted certain accommodations and additional loan advances relating to the aforementioned loans.  In connection with the Reaffirmation Agreement, Caledonia, Gail W. Turner, Leona B. Watson and Curneall Watson signed two promissory notes with the SBA.  The first promissory note, bearing an account number ending in 3105, was for $53,406.12 and the seventh promissory note overall.  The second promissory note, the eighth overall and bearing an account number ending in 3204, was in the amount of $63,186.58 plus interest at the rate of 4% per annum.

As security for the two loans, Leona B. Watson and Curneall Watson executed and delivered to the SBA a mortgage in the amount of $153,186.58 encumbering Plots 101 and 106 of Estate Grove Place, Prince Quarter, St. Croix, U.S. Virgin Islands.  As additional security, Leona B. Watson and Curneall Watson executed and delivered to the SBA an assignment of rents, assigning to the SBA all income derived from Plot 2, Estate Spring Garden, St. Croix, U.S. Virgin Islands.  Caledonia, Gail W. Turner, Leona B. Watson and Curneall Watson defaulted on the loans.  The outstanding principal on the seventh promissory note as of November 7, 2002 was $12,729.84 and the outstanding principal on

-9-

the eighth promissory note as of that date $31,170.33 plus interest in the amount of $7,390.94.  Since then additional interest has accrued on the eighth promissory note at the rate of $3.42 per day.

On April 25, 1996 Caledonia executed a ninth promissory note with the SBA, bearing an account number ending in 3203, in the amount of $30,000.  Caledonia defaulted on the loan.  The outstanding principal on the loan as of November 7, 2002 was $28,656.10.

In late 1998 and early 1999, Gail W. Turner was working with the SBA to refinance the aforementioned loans because Caledonia had been experiencing ongoing financial hardships due to a series of hurricanes that struck St. Croix.  Gail W. Turner alleges that during the same time the SBA and Jerome Smith, an SBA employee, were discriminating against her and Caledonia Springs.  As a result, in March, 1999 Gail W. Turner filed a discrimination claim with the Area Civil Rights Director on behalf of herself and Caledonia.

In a letter dated May 10, 1999 the SBA notified Caledonia that the loans would be sold in an asset sale.  The asset sale was to take place pursuant to the SBA Asset Sale Program, which was mandated under the 1998, 1999 and 2000 Federal budgets.  See 64 F.R. 31341, 64 F.R. 43807, 65 F.R. 41741.  The letter informing the Caledonia Defendants of the sale stated: "Your loan ... will be included in the first sale, unless your indebtedness with the SBA is settled by July 2, 1999 ....  Please

be advised that all your rights and obligations under the existing note and any security agreements will remain in full force and effect after the sale." Gail Watson Chiang, a/k/a Gail W. Turner Aff., Ex. A, hereinafter "Turner Aff." Upon receiving the letter, Gail W. Turner contacted Ana Del Toro, Chief of the Portfolio Management Division at the SBA, to object to the sale of the loans. Gail W. Turner maintains that Ms. Del Toro told her that no loans currently in negotiation, dispute or litigation would be included in the asset sale.

Thereafter, on August 3, 1999, Curneall Watson wrote a letter to Ms. Del Toro. In it he stated, "[i]t has been brought to my attention that SBA intended to sell [our loan portfolio]. Ms. Gail W. Chiang on behalf of Caledonia Springs, Inc. and my wife Leona Watson and I expressed our objection to the sale on June 28, 1999 .... [i]t is apparent that your office has no intention [] to answer ... our objection to the sale of our loan portfolio." Turner Aff., Ex. C. In the same letter, the Caledonia Defendants offered to pay the SBA $306,204.22 for the full discharge of five of the subject loans and the release of the property liens securing those loans.[10] According to the Caledonia Defendants, the SBA refused to negotiate with them to reach a compromise.

---

10. The offer in compromise was for the discharge of the following loans: (1) the third promissory note, dated March 2, 1990; (2) the fourth promissory note, dated July 23, 1990; (3) the fifth promissory note, dated September 26, 1990; (4) the sixth promissory note, dated September 26, 1990; and (5) the eighth promissory note, dated October 31, 1993.

-11-

Despite Curneall Watson's letter, the Caledonia Defendants maintain that they believed Ms. Del Toro's oral statement that loans in negotiation, dispute or litigation would not be part of the sale and that documents the SBA disseminated to the public about the sale reaffirmed their belief that their loans would not be included.  One document cited by the Caledonia Defendants and available on the SBA's website stated:

> Will any of the assets that are presented to the marketplace for sale be involved in litigation?
> Yes.  The SBA's collection of delinquent loans may include either the SBA's Office of General Counsel or the Department of Justice when litigation is commenced.  Loans with litigation matters that are handled by the Department of Justice are not being targeted for the initial sales, but other loans with litigation may be included.

Asset Sales Program Frequently Asked Questions, Mar. 2004, http://www.sbaonline.sba.gov/assets/faqs.html.

On June 7, 2000, Gail W. Turner and Caledonia filed suit against the SBA based on their allegations of discrimination.  Watson Chiang v. United States Small Business Administration, No. 00-71 (D.V.I.).  In that action, Gail W. Turner and Caledonia alleged breach of contract, breach of fiduciary duty and discrimination.[11]  Nevertheless the SBA sold the nine loans to plaintiff in September, 2000.

---

11.  Watson Chiang v. United States Small Business Administration was dismissed by this court pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.  No. 00-71 (D.V.I. Apr. 16, 2007).  The dismissal is currently before our Court of Appeals.

The counterclaims against plaintiff allege breach of fiduciary duty, breach of contract, and discrimination based upon the conduct of the SBA and Jerome Smith.  In fact, those claims are identical to those filed in <u>Watson Chiang v. United States Small Business Administration</u>, No. 00-71 (D.V.I.).  The Caledonia Defendants also assert a counterclaim for misrepresentation based upon Ms. Del Toro's statement to Gail W. Turner.

On January 23, 2004, plaintiff filed a notice with this court that it had served upon all defendants its motion for summary judgment.  Only two responses were filed.  The first, by the Virgin Islands Small Business Development Agency stated that it holds a mortgage security interest in Plot 2F, Estate La Reine, King Quarter, St. Croix and Plot 7A, Estate Plessens, Prince Quarter, St. Croix, which were pledged by Gail Watson Turner and Caledonia Springs as security for a mortgage indebtedness on the April 6, 1992 loan.  It conceded, however, that its security interest is subordinate to the mortgage held by plaintiff.  The second response, filed by the Farmers Home Administration, now known as the United States Department of Agriculture, Farm Service Agency, asserted that it has superior liens on Plots 1, 2, and 3 of Estate Spring Garden, North Side Quarter "A," St. Croix, U.S. Virgin Islands.  In its reply, plaintiff conceded the superior interest of the Farm Service Agency in the properties.  The Caledonia Defendants did not file a response.

-14-

On May 7, 2004, the Caledonia Defendants filed their response to plaintiff's motion for summary judgment, in which they moved for this court to delay decision on plaintiff's motion for summary judgment so that they may conduct discovery.[13]  See Fed. R. Civ. P. 56(f).  On August 2, 2004 the Caledonia Defendants were granted an extension of time until November 1, 2004 to obtain new counsel, file an opposition to the motion of plaintiff for summary judgment, and file a motion pursuant to Rule 56(f).  On November 1, 2004, the Caledonia Defendants filed a second motion for continuance to permit discovery pursuant to Rule 56(f) and opposition to plaintiff's motion for summary judgment.[14]

In the Caledonia Defendants' opposition to plaintiff's motion for summary judgment they maintain that plaintiff is subject to all defenses the Caledonia Defendants have against the SBA.  Moreover, according to the Caledonia Defendants genuine issues of material fact remain whether:  (1) the SBA's sale of the loans to plaintiff was lawful and valid; (3) the SBA breached its contract with the Caledonia Defendants; and (4) the SBA breached its fiduciary duty to the Caledonia Defendants.

_____

13.  The Caledonia Defendants simultaneously filed a motion for enlargement of time to file a response.  Under the Virgin Islands Local Rules of Civil Procedure, a respondent must serve all opposition papers within twenty days of being served with the notice and motion of summary judgment.  See V.I. R. Civ. P. 56.1(b).

14.  The Caledonia Defendants' opposition was docketed twice, first on November 1, 2004 and again on December 15, 2004.  The record is unclear why this occurred.

Plaintiff points out in its reply that the Caledonia Defendants do not question the completeness or accuracy of the loan documents, the amounts due under the promissory notes, or the validity of the mortgages and security agreements that secure the loan obligations.  According to plaintiff, they are entitled to summary judgment because there are no genuine issues of material fact as to whether the SBA's sale of the loans was valid or whether the SBA breached its contract with or fiduciary duty to the Caledonia Defendants.

II.

At the outset we must determine if plaintiff is subject to all defenses the Caledonia Defendants have against the SBA. The Virgin Islands Code provides that "the right to enforce the obligation of a party to pay an instrument is subject to ... a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract ...." 11A V.I.C. § 3-305(a).  A "holder in due course," however, is not subject to such defenses. Id. § 3-305(b).  Plaintiff concedes that it is not a holder in due course because it knew the loans were in default when it purchased them from the SBA.  As a mere assignee of the loan agreements, plaintiff stands in the shoes of the SBA, the assignor.  Id. § 3-305(a)(2).  Accordingly, plaintiff is subject to the defenses of the Caledonia Defendants that would be available if plaintiff were seeking to enforce a right to payment under a contract.

-16-

III.

Since the Caledonia Defendants do not challenge the authenticity of or amounts due on the loan agreements, we concern ourselves only with the defenses they assert. First, they argue that the SBA's sale of the loans to plaintiff was invalid and unlawful under the doctrines of unclean hands and promissory estoppel.

The doctrine of unclean hands is an equitable defense designed to further the interests of justice. To prevail on this defense, the party asserting the defense must show that the opposing party engaged in "fraud, unconscionable conduct, or bad faith." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 147 n.12 (3d Cir. 1999). Furthermore, "[o]nly when 'some unconscionable act of one coming for relief has immediate and necessary relation to the equity that' the party seeks, will the doctrine bar recovery." New Valley Corp. v. Corporate Prop. Assocs. 2 and 3, 181 F.3d 517, 525 (3d Cir. 1999)(quoting Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245 (1933)).

According to the Caledonia Defendants, the SBA conducted the sale with unclean hands because Ms. Del Toro, Chief of the Portfolio Management Division at the SBA, told Gail W. Turner that loans in negotiation, dispute or litigation would not be included in the bulk sale. The Caledonia Defendants maintain that since it was within the SBA's discretion to determine which

-17-

loans would be included in the bulk sale, the SBA deceived them
by proceeding with the sale after Ms. Del Toro's statement.

     The Caledonia Defendants have not come forward with any
evidence that the actions of Ms. Del Toro or the SBA were
fraudulent, unconscionable or done in bad faith.  Under Virgin
Islands law, common law fraud is "(1) a false representation of
material fact, (2) ... intent that the statement be acted upon,
(3) reliance upon such a statement by the persons claiming to
have been deceived, and (4) damages."  <u>Charleswell v. Chase
Manhattan Bank, N.A.</u>, 308 F. Supp. 2d 545, 568-69 (D.V.I. 2004)
(citation omitted).  The Restatement (Second) of Torts further
states that the reliance must be "justifiable."  Restatement
(Second) of Torts § 525; <u>see also</u> <u>Island Insteel Sys. v. Waters</u>,
296 F.3d 200, 212 (3d Cir. 2002).[15]  That is, the party alleging
fraud must have reasonably relied on the material
misrepresentation to its detriment.

     Plaintiff contends that there is no evidence the
Caledonia Defendants relied on Ms. Del Toro's oral statement.
Specifically, plaintiff cites to Curneall Watson's August 3, 1999
letter to the SBA, which was sent after Ms. Del Toro purportedly
informed Gail W. Turner that loans in negotiation, dispute, or

---

15.  The Virgin Islands code provides:  "The rules of the common
law, as expressed in the restatements of the law approved by the
American Law Institute, and to the extent not so expressed, as
generally understood and applied in the United States, shall be
the rules of decision in the courts of the Virgin Islands in
cases to which they apply, in the absence of local laws to the
contrary."  1 V.I.C. § 4.

litigation would not be part of the bulk sale. As noted above, in that letter Curneall Watson stated: "It is apparent that your office has no intention [] to answer ... our objection to the sale of our loan portfolio." (Turner Aff., Ex. C). The letter notes that a "carbon copy" was sent to Caledonia of which Gail W. Turner is a principal owner, President and Chief Executive Officer. The letter undermines the argument of the Caledonia Defendants' that they relied on Ms. Del Toro's statement.

In any event, even assuming that the Caledonia Defendants relied on Ms. Del Toro's statement, the record is devoid of any evidence that the reliance was to their detriment. The Caledonia Defendants simply argue that in reliance on Ms. Del Toro's statement, they "began searching for funding on the assumption that they would be able to modify or restructure the subject loans in order to free up some of the properties for said funding. This would have led to the subject loans being paid." (Defs.' Resp. to Pl.'s Mot. for Summ. J. 9-10, Dec. 15, 2004). They then make the conclusory statement that the SBA thereby "irreparably damaged the [Caledonia] Defendants in that they are now in danger of losing their properties." Id. at 10.

Even if the Caledonia Defendants began their search for funding in reliance on Ms. Del Toro's statement, the search was not to their detriment and did not otherwise cause them harm. The loans were clearly due, and searching for means to make payment on the loans was necessary regardless of whether the SBA held the loans or sold them to plaintiff. Indeed, the May 10,

1999 letter from the SBA informing the Caledonia Defendants of
the loan sale stated:  "If you wish to take advantage of this
opportunity to pay off your loan with the SBA, please contact
this office within 10 days of the date of this letter to begin
the process."  (Turner Aff., Ex. A).  The SBA clearly
contemplated that debtors might seize the opportunity to satisfy
their loans before the bulk sale.  That the Caledonia Defendants
took steps to do so in no way harmed them.  It is of note that
more than a year elapsed from the time Ms. Del Toro told Gail W.
Turner that the loans would not be included in the sale until the
time the loans were sold to plaintiff in September, 2000.

        Nor is there any evidence that the SBA's conduct was
unconscionable or that it acted in bad faith.  Ms. Del Toro's
statement cannot be interpreted as an attempt to deceive the
Caledonia Defendants about the bulk sale.  Indeed, the Caledonia
Defendants' own statements establish that, even after speaking to
Ms. Del Toro, they continued to believe that their loans would be
included in the sale.  The Caledonia Defendants have produced no
evidence creating a genuine issue of material fact on the issue
of "unclean hands."

        The Caledonia Defendants' claim of promissory estoppel
similarly fails.  Under Virgin Islands law, promissory estoppel
is "[a] promise which the promisor should reasonably expect to
induce action or forbearance on the part of the promisee or a
third person and which does induce such action or forbearance is
binding if injustice can be avoided only by enforcement of the

-20-

promise.  The remedy granted for breach may be limited as justice requires." Restatement (Second) of Contracts § 90, <u>see Charleswell</u>, 308 F. Supp. 2d at 560.  The Caledonia Defendants again argue that they relied on Ms. Del Toro's promise that their loans would not be included in the sale.  As discussed above, the Caledonia Defendants took no detrimental action or forbearance. They only searched for funding to pay off their loans. Therefore, promissory estoppel does not void the SBA's sale of the loans to plaintiff.

Next the Caledonia Defendants argue that equitable estoppel is applicable to the SBA's failure to act on the Caledonia Defendants' August 3, 1999 offer to compromise.  "To succeed on a traditional estoppel defense the litigant must prove (1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment." <u>Monongahela Valley Hosp., Inc. v. Sullivan</u>, 945 F.2d 576, 589 (3d Cir. 1991) (quoting <u>United States v. Asmar</u>, 827 F.2d 907, 912 (3d Cir. 1987) (citing <u>Heckler v. Community Health Servs.</u>, 467 U.S. 51, 58 (1984)).  Our Court of Appeals has "'identified a fourth element that must be proven when a party alleges estoppel against the government,' namely, 'affirmative misconduct.'" <u>Id.</u>

The Caledonia Defendants argue that equitable estoppel applies because "not only did the SBA make an affirmative material misrepresentation in telling the [Caledonia] Defendants that their loans would not be sold and that SBA would continue to deal with them, the SBA affirmatively refused to consider the

-21-

offer in compromise ...." (Defs.' Resp. to Pl.'s Mot. for Summ.
J. 12). The offer to compromise, contained in Curneall Watson's
August 3, 1999 letter to the SBA, stated:

> It is apparent that your office has no
> intention either to answer our Discrimination
> Complaint, nor our objection to the sale of
> our loan portfolio.
> Therefore, I am formally writing to you to
> propose an Offer in Compromise with SBA in
> the amount of Three Hundred and Six Thousand
> Two Hundred and Four Dollars and Twenty Two
> Cents - $306,204.22 for the full discharge of
> the stated loan debts and the release of the
> property liens.

(Turner Aff., Ex. C.).

The only misrepresentation alleged by the Caledonia
Defendants is Ms. Del Toro's oral statement to Gail W. Turner
that loans in negotiation, dispute or litigation would not be
part of the sale. There is no allegation that she, or anyone
else at the SBA, made any statements about the SBA's willingness
or unwillingness to accept an offer in compromise. The offer in
compromise was not made in reliance on Ms. Del Toro's purported
misrepresentation. Indeed, the letter explicitly states that the
offer to compromise was being made because the SBA would not
respond to the Caledonia Defendants' objection to the sale.
Regardless, there is no evidence that the Caledonia Defendants
were harmed as a result of the offer. It is true that the SBA
did not accept the offer, but the SBA acted well within its
rights. The Caledonia Defendants have therefore presented no
evidence creating a genuine issue of material fact on the issue

of equitable estoppel so as to preclude the grant of summary judgment to plaintiff.

IV.

The Caledonia Defendants contend that summary judgment should not be granted because there exist genuine issues of material fact regarding their counterclaims.  The counterclaims against plaintiff all derived from SBA's conduct:  (1) breach of contract; (2) breach of fiduciary duty; (3) discrimination on the basis of race and gender; and (4) misrepresentation.[16]

First, the Caledonia Defendants maintain that the SBA breached the loan contracts as modified through its conduct. Specifically, they argue that over the course of their borrowing relationship with the SBA, it permitted them to modify their loan agreements by increasing the loans and refinancing existing loans to allow them time to recover from a series of hurricanes and storms on St. Croix and to continue operating their business during the recovery.  According to the Caledonia Defendants, borrowers were given at least two years to recover from such disasters and during that time the SBA would only take servicing actions if "(1) [i]t will assist the small business in solving the problem and improve its ability to repay the loan; and (2) [i]t will assist the Agency in realizing maximum recovery."  U.S.

---

16.  We note that the Caledonia Defendants filed a motion to amend their counterclaims to add a claim for misrepresentation. It appears the motion to amend was never granted.  Plaintiff, however, filed an answer to the amended counterclaims on April 19, 2006.  We will therefore consider the Caledonia Defendants' counterclaim for misrepresentation.

Small Business Administration SOP 50 50 4e(1)(b).  This "course of performance," the Caledonia Defendants argue, modified the terms of the promissory notes.  They maintain that when Hurricane George hit St. Croix in September, 1998 the SBA was required to give the same allowances as in the past and accept their August 3, 1999 offer to compromise.

The promissory notes, guaranties, mortgages, and security agreements within the loan documents all contained non-waiver provisions which state that the obligations of the debtors, that is the Caledonia Defendants, would not be modified by any indulgences by the SBA.  Even assuming, arguendo, that SBA modified the terms of the contract, the Caledonia Defendants have presented no evidence that such modification required SBA to accept their August 3, 1999 offer to compromise.  The Caledonia Defendants do not allege or offer any evidence that in the past SBA categorically accepted their offers.  It does not follow that merely because the Caledonia Defendants made an offer in compromise that the SBA was compelled to accept it.

The Caledonia Defendants further contend that in the past the SBA had given them two years to recover financially from natural disasters before making further payments on the loans.  Therefore, according to the Caledonia Defendants they should have been granted similar leniency after Hurricane George in September, 1998.  However, plaintiff did not file the present action until November 27, 2002.  During this four year period the Caledonia Defendants made no payments.  Indeed, nine years have

-24-

now passed since Hurricane George and still no payments have been made. Therefore, even if the SBA modified the terms of the loan contracts through its course of performance to allow, in effect, a two year grace period after natural disasters during which the Caledonia Defendants were not required to make loan payments, they have still made no payments in the years since the grace period has expired. Summary judgment will therefore be granted with regard to the Caledonia Defendants' counterclaim for breach of contract.

We next turn to the Caledonia Defendants' counterclaim for breach of fiduciary duty. They allege that the SBA breached its fiduciary duty to them by failing to remain neutral while they were in Chapter 11 Bankruptcy. Our Court of Appeals has stated that "[c]reditor-debtor relationships ... rarely are found to give rise to a fiduciary duty." Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 53 (3d Cir. 1988). The Court went on to explain that "[i]t ordinarily 'would be anomalous to require a lender to act as a fiduciary for interests on the opposite side of the negotiating table.'" Id. (quoting Weinberger v. Kendrick, 698 F.2d 61 (2d Cir. 1982), cert. denied, 464 U.S. 818 (1983)). There is a presumption that a lender and borrower "operate[] at arms-length and the parties each act[] in their own interest." Jo-Ann's Launder Center, Inc. v. Chase Manhattan Bank, N.A., 854 F. Supp. 387, 392 (D.V.I. 1994). The presumption is not insurmountable and a fiduciary duty may arise if, for example, the lender acquires substantial control over the

-25-

borrower's business.  Id.; see also Financial Trust Co., Inc. v. Citibank, N.A., 268 F. Supp. 2d 561, 573 (D.V.I. 2003).

The Caledonia Defendants state in their counterclaim that they were "customers and clients of the plaintiff SBA and relied upon the plaintiff SBA for financial assistance, advise, [sic] counseling and information during the course of their relationship." (Defs.' Answer to Pl.'s Compl. 14).  In the face of plaintiff's motion for summary judgment on the counterclaim, however, they have not come forward with any evidence overcoming the presumption that the SBA did not owe them a fiduciary duty. Moreover, in the affidavit of Gail W. Turner attached to the Caledonia Defendant's response she merely states that "[i]n or about late 1998 and early 1999, I was in the process of working with the SBA on obtaining refinancing of the subject loans." (Turner Aff. 2).  There is nothing in the record to establish that the SBA had substantial control of their business.  In fact, Gail W. Turner's statement describes the quintessential arms-length, lender and borrower relationship, and her negotiations with the SBA hardly overcome the presumption that no fiduciary duty existed.  The SBA did not have control over Caledonia nor have the Caledonia Defendants presented evidence that the SBA's relationship with them extended in anyway beyond holding and servicing their loans.

Likewise, the Caledonia Defendants have presented no evidence in support of their counterclaim of discrimination. Their counterclaim states:  "SBA's action in over capitalization

-26-

of the Defendants' assets, refusing to provide the Defendants with financial assistance, advice counseling and information at a critical stage, and aligning with the Defendants' opponents in the bankruptcy and civil action were all motivated by discriminatory animus against the Defendants on the basis of race (African-American) and gender (female)." (Defs.' Am. Answer to Pl.s' Compl. and Countercl.). Gail W. Turner's affidavit attached to the Caledonia Defendants' opposition to plaintiff's motion for summary judgment makes no mention, however, of the alleged discrimination nor is it discussed by either plaintiff or the Caledonia Defendants in the summary judgment briefs. The Caledonia Defendants may not rely on mere assertions to survive summary judgment. Accordingly, the motion of plaintiff for summary judgment on this counterclaim will be granted.

The Caledonia Defendants' counterclaim for misrepresentation based on Ms. Del Toro's statement that loans in negotiation, dispute or litigation would not be included in the asset sale similarly fails. It is unclear from the Caledonia Defendants' counterclaim whether they are alleging that Ms. Del Toro's purported misrepresentation was fraudulently or negligently made. Regardless, the result is the same. As discussed at length above, there is no evidence that the Caledonia Defendants relied on Ms. Del Toro's statement to their detriment. See Charleswell, 308 F. Supp. 2d at 568-69, Restatement (Second) of Torts § 552. Accordingly, summary judgment will be granted in favor of plaintiff.

V.

Finally, we must address the contested November 1, 2004 motion of the Caledonia Defendants for "continuance to permit discovery."  Rule 56(f) of the Federal Rules of Civil Procedure provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

It is well settled that a party moving under Rule 56(f) must submit "a supporting affidavit detailing what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Doe v. Abington Friends Sch., 480 F.3d 252, 256 n.3 (3d Cir. 2007) (quotation omitted).

As mentioned previously, the Caledonia Defendants have twice filed a motion under Rule 56(f), first on May 7, 2004 and again on November 1, 2004.  In their May 7, 2004 motion the Caledonia Defendants contended that discovery was needed so that they may demonstrate "that the loans were over-collateralized, and that the SBA sold the loans after defendants filed a discrimination claim, when the SBA policy provided that no loan were [sic] to be sold that were in dispute."  (Defs.' Reply to

-28-

Pl.'s Mot. for Summ. J., May 7, 2004).  An affidavit by Gail W.
Turner was filed simultaneously but did not identify what
information the Caledonia Defendants would seek if permitted
additional time for discovery.  They maintained, however, that
discovery was needed because plaintiff's right to foreclose on
the loans is subject to all defenses they have against the SBA.
Plaintiff opposed the motion.  It argued that the affidavit
failed to identify the information being sought through discovery
and that summary judgment would not be precluded even if the
Caledonia Defendants could prove that the loans were over-
collateralized and that the SBA sold the loans in contravention
of its policy.

On August 2, 2004 the Caledonia Defendants were granted
an extension of time until November 1, 2004 to obtain new counsel
and file a second motion pursuant to Rule 56(f).  The Caledonia
Defendants' November 1, 2004 motion included an affidavit by the
their attorney, Marty V. Miller.  The affidavit requests
additional time for discovery so that they may seek:  (1)
"further information with regard to the assurances SBA
representative Ana Matilde del Toro made to Gail Watson Chiang;"
and (2) "SBA's policies on nonperforming loans; loans in dispute;
loans subject to litigation; offers in compromise made by
borrowers; loan servicing policies with regard to borrowers whom
are harmed by natural disasters; policies regarding modifications
of loans; Loan Serving [sic] Department negotiations with
borrowers; and policies on loan collateralization." (Miller Aff.

-29-

5).  Mr. Miller stated that further discovery would permit the
Caledonia Defendants to "establish that triable issues of fact
exist ...." Id.

On November 1, 2004, the Caledonia Defendants filed
notice of service of their first set of interrogatories and
request for production.  Therefore, at the time the parties were
briefing the Caledonia Defendants' motion pursuant to Rule 56(f)
they had received no response from plaintiff.  On February 15,
2005 and February 16, 2005, however, plaintiff filed notices that
it had complied with the Caledonia Defendants' requests.

We decline to grant the Caledonia Defendants' request
for more time to conduct discovery.  First, we find Marty V.
Miller's affidavit deficient because it does not explain how the
information sought would preclude summary judgment.  It merely
states that with the information sought the "Defendants will be
able to establish that triable issues of fact exist ...."
(Miller Aff. 5).  With regard to Ms. Del Toro's statement to Gail
W. Turner, the key deficiency in the Caledonia Defendants' claims
is that they did not rely on it to their detriment.  Information
regarding the Caledonia Defendants' reliance, and any ensuing
harm, would be within their possession, not plaintiff's.
Additional discovery would not create a genuine issue of fact in
this regard.

Second, Marty V. Miller's affidavit states that the
Caledonia Defendants intend to seek:  "policies on nonperforming
loans; loans in dispute; loans subject to litigation; offers in

-30-

compromise made by borrowers; loan servicing policies with regard to borrowers whom are harmed by natural disasters; policies regarding modifications of loans; Loan Serving [sic] Department negotiations with borrowers; and policies on loan collateralization." (Miller Aff. 5). Again, this information would not preclude summary judgment. The key deficiency in the Caledonia Defendants' equitable defenses is that they did not rely to their detriment on Ms. Del Toro's statement. The SBA's loan policies will not change this. Moreover, the policies would not affect the Caledonia Defendants' counterclaim for breach of contract. As discussed above, even if the loan agreements were modified, as the Caledonia Defendants maintain, to allow them two years to recover from natural disasters, there is no breach of that term. The SBA's loan policies will not create a genuine issue of material fact in regard to this counterclaim.

This case has been languishing for a long time. The action was commenced in November, 2002. Plaintiff filed its motion for summary judgment on January 23, 2004. The Caledonia Defendants initially failed to respond to the motion, and it was not until May 7, 2004 that they moved for an extension of time to respond. Plaintiff then moved for entry of default and renewed its motion for summary judgment on July 20, 2004. On August 2, 2004, plaintiff's motion for default judgment was denied, and the Caledonia Defendants were granted an extension of time on August 2, 2004 "to retain new counsel ... and file defendants' Opposition to plaintiff's Motion for Summary Judgment,

defendants' Rule 56(f) Motion, and any other appropriate papers with regard to the motions currently pending before this Court, if any." It was not until the last day of the extension that the Caledonia Defendants filed their first set of interrogatories and request for production. Plaintiff complied with the Caledonia Defendants' discovery requests in February, 2005. The Caledonia Defendants had two years to conduct discovery to secure any necessary evidence but waited until the last day of its extension to make any such requests. The Caledonia Defendants' request for further extension is therefore without merit.